UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MERLE E. STIMPSON, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:16-cv-520(SRU) |
| : | |
| COMM'R CORRECTION OFFICE, ET AL., : | |
|     Defendants. : | |

### **RULING AND ORDER**

      The plaintiff, Merle E. Stimpson, incarcerated and *pro se*, initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 against the Commissioner of Corrections, Warden Carol Chapdelaine, and Captain Hall. Pending before the court are Stimpson's motion to proceed *in forma pauperis*, a letter motion to add new defendants, and a letter motion for preliminary injunction and an amended complaint. (ECF Nos. 16, 17, and 18) For the reasons set forth below, the motions are denied and the amended complaint is dismissed.

**I.      Application to Proceed In Forma Pauperis [ECF No. 16]**

      Stimpson seeks leave to proceed *in forma pauperis*. On April 26, 2016, the court granted Stimpson leave to proceed *in forma pauperis*. *See* ECF No. 10. Accordingly, the new application to proceed *in forma pauperis* is denied as moot.

**II.     Amended Complaint [ECF No. 15]**

      The initial complaint included allegations regarding the placement of Inmate Andino in Stimpson's cell at MacDougall-Walker Correctional Institution ("MacDougall-Walker") in mid-

February 2016, Stimpson's unsuccessful attempts to be moved from the cell because Andino was sexually assaulting him, a false accusation by prison staff that Stimpson had sent a letter to the Commissioner of Correction as if he were Inmate Andino, and Stimpson's placement in restrictive housing after receiving a disciplinary report for sending the letter to the Commissioner. *See* Compl., ECF No. 1 at 1–3.

On June 16, 2016, Stimpson filed a letter motion seeking to add new claims regarding an incident that occurred on June 8, 2016, involving Captain Hall's alleged decision to place Inmate Vernal Davis in Stimpson's cell as his new cellmate. *See* ECF No. 11. Because the defendants had not responded to the complaint and that was Stimpson's first request to file an amended complaint, I granted the motion to amend on June 29, 2016. *See* Ruling and Order, ECF No. 12.

In the June 29 ruling granting the motion to amend, I noted that Stimpson had not attached a proposed amended complaint to his motion that was in the proper form. The documents attached to the motion did not contain a case caption with a title listing Stimpson as the plaintiff and the name of each defendant nor did it include a designation identifying the document as an amended complaint, as required by the civil rules governing the form of pleadings. *See* Fed. R. Civ. P. 10. In addition, the letter motion did not include any of the claims that were set forth in the original complaint. I cautioned Stimpson that any amended complaint would completely replace the original complaint. Thus, any amended complaint should include the allegations against the defendants named in the complaint with regard to the incidents that were described in the complaint to the extent that Stimpson still sought to pursue those claims.

In addition, I observed that Stimpson had not alleged that he had exhausted his administrative remedies with regard to any of the incidents set forth in the initial complaint or the

2

June 8, 2016 incident set forth in the motion to amend. Section 1997e of Title 42 of the United States Code governs actions brought by prison inmates. Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." That subsection applies to all claims regarding prison life, including the use of excessive force by prison staff. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

I informed Stimpson that exhaustion of all available administrative remedies must occur regardless whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 83–85 (2006). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement**.** *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Accordingly, I instructed Stimpson that any amended complaint must include allegations regarding any attempts by him to exhaust administrative remedies with regard to his claims prior to filing this lawsuit. *See* Ruling and Order, ECF No. 12 at 4.

In response to my order, Stimpson sent a letter to the Clerk, accompanied by thirty-five pages of exhibits allegedly showing retaliation by the Department of Correction. Stimpson did not file an amended complaint. *See* ECF No. 13.

On August 11, 2016, I informed Stimpson that if he sought to proceed with this action, he must file an amended complaint that complied with the June 29 order. *See* Order, ECF No. 14. I

instructed Stimpson that any amended complaint must be filed within thirty days of the date of that order and cautioned Stimpson that if he chose not to file an amended complaint within the time specified, the case would only proceed only on the claims in the initial complaint.

Stimpson did not file an amended complaint within the time specified. Instead, he waited until October 19, 2016 to file an amended complaint. *See* Am. Compl., ECF No. 15. Thus, the amended complaint is untimely. I nevertheless review it as follows:

In the caption of the amended complaint, Stimpson lists the following people or entities as defendants: Office of CT - Commissioner of Corrections, Warden Carol Chapdelaine and Captain Hall and "Et Al." Stimpson subsequently describes the first defendant as Commissioner Scott Semple and the "Et Al." defendant as "future/present defendants here in CT-D.O.C." *See id.* at 2–3. Because Commissioner Scott Semple is not listed in the caption of the amended complaint, he is not a defendant. *See* Fed. R. Civ. P. 10(a) ("[T]he title of the complaint must name all the parties.").

Attached to the amended complaint are forty-eight pages of exhibits. On page five of the amended complaint, the plaintiff simply states that in addition to the original claim, he seeks to file an amended complaint on the basis of the following: "I have sent to this court 35 pages of Exhibits showing retaliation by CT D.O.C." *See id.* at 5. He states that he has been retaliated against by all of the defendants and he has filed grievances with the Commissioner and the Warden about Captain's Hall's actions. *See id.* In particular, Stimpson alleges that Captain Hall has used her position to retaliate against him. *See id.* In response to his request regarding his clothes "being burnt" by the facility laundry personnel, Captain Hall told Stimpson to re-wash his clothes. *See id.* Stimpson states that he filed an inmate request with regard to his burned

4

clothes as well as a grievance and an appeal of the decision disposing of the grievance. In response to his inmate request, a correctional treatment officer indicated that prison officials had given him new clothes on August 1, 2016. *See id.* at 6. Stimpson claims that he has not received new clothes. He seeks $550,000.00, deferral of costs of incarceration, and reimbursement of the filing fee. *See id.* He seeks injunctive relief in the form of an order that he be permitted a single cell and that he be able to order or buy items out of different catalogues. *See id.*

Stimpson includes no allegations from the original complaint and does not include any allegations regarding the incident that occurred on June 8, 2016 for which he sought leave to amend to the complaint. The first forty-two pages of exhibits attached to the amended complaint instead relate to incidents that occurred after June 29, 2016. The last six pages of exhibits appear to be unrelated to any of the allegations in the initial complaint or the amended complaint, including a notice or an order of change of name, a request for Stimpson's military records, and a confirmation by a Department of Correction counselor that the Stimpson's status as a veteran had been updated as of June 9, 2016.

To state a retaliation claim, a plaintiff must show: "(1) that the conduct or speech at issue was protected, (2) that the defendant[s] took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citations and internal quotation marks omitted). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003).

The allegations in the amended complaint that the defendants retaliated against Stimpson are conclusory. Stimpson does not set forth facts indicating that he engaged in protected conduct or speech. Furthermore, Stimpson includes no allegations with regard to retaliatory conduct on the part of the defendants. Nor are there any allegations demonstrating a causal connection between protected speech or conduct on the part of Stimpson and retaliatory conduct by the defendants. Thus, Stimpson's conclusory claims of retaliation fail to state a claim upon which relief may be granted and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The remaining allegations in the amended complaint relate to Stimpson's claims regarding his clothes. An attachment to the amended complaint reflects that in a request to Captain Hall dated July 28, 2016, Stimpson asked that his clothes, which he asserted smelled burned and/or were burned by the prison laundry, be replaced. *See* Am. Compl., Exhibits, ECF No. 15-1 at 16. In response, Captain Hall suggested that Stimpson re-wash the clothes that smelled burned and to bring the burned clothes to her office for review. *See id.* Stimpson does not allege that he brought the burned clothes to Captain Hall for review. He does allege, in a grievance that he filed on August 2, 2016, that he tried to re-wash his clothes, but the burn marks would not come out. *See id.* at 14. Stimpson claims that as of August 1, 2016, he had not received any replacement for the burned clothes.

The allegations against Captain Hall with regard to Stimpson's burned or stained clothes do not state a claim upon which relief may be granted. "[A] prison official violates that Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious . . . [Second,] a prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98

6

(1991)). The State violates the Eighth Amendment when it "fails to provide for [inmates'] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Stimpson has not alleged that Captain Hall deprived him of a basic human need. There are no allegations that he had no clothes to wear after some items of his clothing were burned in the prison laundry or that he could not wear the clothes that had burned marks. Thus, Stimpson does not state a claim upon which relief may be granted under the Eighth Amendment and the allegations related to his burned clothes are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### III. Letter Seeking to Add Defendants [ECF No.17]
### Letter Seeking Injunctive Relief [ECF No. 18]

Stimpson has submitted a letter to the court in which he seeks to add Department of Correction employees to his list of defendants. *See* Letter, ECF No. 17. The second page of the letter lists six individuals. *See id.* at 2. In a second letter submitted to the court, Stimpson includes allegations regarding an incident that occurred on November 28, 2016 involving an inmate named Peterson. *See* Letter, ECF No. 18. At the end of the letter, Stimpson states that CCS Calderon and CCS Davis are now also added to the list of his defendants. *See id.* at 2.

I have not granted Stimpson leave to add any new individuals as defendants in this action. Furthermore, there are no facts asserted with regard to how any of the individuals who are listed in either motion violated his constitutional rights. Accordingly, the requests for leave to amend to add new defendants are denied.

To the extent that the second letter may be construed as a request for injunctive relief, the request is denied. Stimpson states that on November 28, 2016, he was involved in an altercation with another inmate named Peterson who weighed 400 pounds. Stimpson claims that a John/Jane Doe officer at MacDougall-Walker made Inmate Peterson aware of the appeal that Stimpson had filed in the Connecticut Appellate Court to challenge his conviction. After learning of that information, Inmate Peterson punched Stimpson. Stimpson fought back. He received a disciplinary report for fighting and was sent to segregation. Stimpson indicates that he is challenging disciplinary charge in a disciplinary hearing, but expects to lose.

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). Thus, an inmate's requests for injunctive and declaratory relief against correctional staff or conditions of confinement at a particular correctional institution become moot when the inmate is discharged or transferred to a different correctional institution. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief.") (citations omitted); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (prisoner's release from incarceration moots claim for injunctive relief); *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000) ("Because [inmate] is no longer incarcerated and under the supervision of any of the named defendants, his requests for injunctive relief are dismissed as moot.").

Stimpson is now incarcerated at Cheshire Correctional Institution. Furthermore, Stimpson does not allege that any of the defendants in the complaint were involved in the fighting incident.

Thus, the relief sought by Stimpson with regard to conditions at MacDougall-Walker and to correctional employees who are not defendants in the case is no longer needed.

In addition, the incident involving the fight with Inmate Peterson is not related to the claims in the complaint. It would be inappropriate for the court to grant a request for injunctive relief that is unrelated to the claims and the defendants in the complaint. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit"); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."); *Lewis v. Johnson*, 2010 WL 1268024, at * (N.D.N.Y. Apr. 1, 2010) (denying motion for preliminary injunction based on actions taken by staff at Great Meadow Correctional Facility in 2010 where complaint alleged wrongdoing by staff at Franklin and Upstate Correctional Facilities in 2006 and 2007).

Accordingly, for all the reasons set forth above, the letter request for injunctive relief is denied.

### IV.   Initial Complaint [ECF No. 1]

Because Stimpson has not filed an amended complaint that complies with the court's orders or that states a claim upon which relief may be granted, the court also considers the allegations in the initial complaint. That complaint includes the following allegations. On or about February 14, 2016, at MacDougall-Walker Correctional Institution, prison officials placed

9

Stimpson in a cell with an inmate named George R. Andino. *See* Compl., ECF No. 1 at 1. At that time, the Department of Correction was aware that Inmate Andino was a sexual predator. *See id.* at 2. Stimpson contacted Captain Hall on several occasions seeking to be moved because Inmate Andino had made sexual advances towards him, had sexually assaulted him by groping him, and had verbally and physically intimidated him. *See id.* Captain Hall took no action and refused to move Stimpson to another cell. *See id.*

On February 25, 2016, Stimpson returned to his cell to find his cellmate masturbating to a photograph of his young daughter. *See id.* Stimpson brought this incident to the attention of several officers and Captain Hall, but no action was taken against Inmate Andino. *See id.* at 2–3.

Later that day, correctional staff accused Stimpson of writing a letter to the Office of the Commissioner of Correction as if he were Inmate Andino. *See id.* at 3. In the letter, Stimpson, as Inmate Andino, claimed to be a homosexual and asked to be moved to protective custody. Correctional staff moved Stimpson to restrictive housing because he had written the letter. *See id.*

    A.    **Office of the Commissioner of Correction**

Stimpson lists the first defendant as the Commissioner of Correction Office. He refers only to the Department of Correction in the complaint. The court liberally construes the complaint as asserting claims against the Commissioner of Correction and the Connecticut Department of Correction.

To state a claim under section 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a constitutionally or federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). Like other

state agencies, the Department of Correction is not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983); *Fisher v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (state prison department cannot be sued under section 1983 because it does not fit the definition of "person" under section 1983). Because the Connecticut Department of Correction is not a person subject to suit under 42 U.S.C. § 1983, the claims against it are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1). The court addresses the claims against the Commissioner of Correction in next two sub-sections of this ruling.

### B.    Official Capacity Claims

The plaintiff seeks monetary damages from defendants Captain Hall, Warden, Chapdelaine, and the Commissioner of Correction in their individual and official capacities. The claims against these defendants in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### C.    Fourteenth Amendment Procedural Due Process Violation

Stimpson alleges that on February 25, 2016, a correctional official falsely accused him of sending a letter to the Commissioner of Correction on behalf of Inmate Andino and that prison staff then placed him in the restrictive housing unit without a hearing. I liberally construe Stimpson's allegations as a claim that his Fourteenth Amendment procedural due process rights were violated.

To state a claim for violation of procedural due process in connection with confinement associated with a disciplinary infraction, an inmate must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. *See Sandin v. Conner,* 515 U.S. 472 (1995). "Liberty interest[s] may arise from the Constitution itself . . . or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 219, 221 (2005) (citations omitted).

In *Sandin*, the Supreme Court examined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474. The Court explained that in the prison setting, liberty interests protected by Due Process will be "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 485. The Court held that Conner's conditions of confinement in disciplinary/punitive segregation for thirty days did not present such a deprivation because an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.*

One of the exhibits filed by Stimpson in response to the order permitting him to file an amended complaint is a copy of a disciplinary report issued by prison officials on February 25, 2016 accusing Stimpson of security tampering because he had sent a letter on behalf of Inmate Andino to the Commissioner of Correction. *See* ECF No. 13 at 30.[1] That report indicates that, as

---

[1] A court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *See*

Stimpson alleges in the complaint, prison officials placed him in a restrictive housing unit on February 25, 2016. On March 11, 2016, a hearing was held and the hearing officer dismissed the security tampering charge against Stimpson for lack of evidence. *See id.* at 32–33.

The Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical or significant hardship sufficient to state a claim under *Sandin*. *See Borcsok v. Early*, 299 F. App'x 76, 78 (2d Cir. 2008) ("Even if we include the eleven days that [plaintiff] spent in SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant."); *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (101-day confinement in restrictive housing unpleasant but not atypical or significant); *Lewis v. Sieminski*, 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "decisions in the Second Circuit are unanimous that keeplock or confinement [in segregated housing] for 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*). Stimpson spent at most sixteen days in administrative detention. Such a brief confinement in restrictive housing does not constitute an atypical and significant hardship.

Stimpson also claims that prison officials placed him in administrative detention without items of his personal property including, family photos, a radio and newspapers, and also refused to provide him with paper, pens, law book or legal papers. He states, however, that he is not asserting a denial of access to the courts claim. *See* Compl., ECF No. 1 at 10. Stimpson also claims that he could not shower for the first four days he was confined in administrative detention.

---

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Stimpson's allegations that he could not shower at one point for four days and did not have access to items of personal property do not constitute a significant hardship. *See Riddick v. Arnone*, 2012 WL 2716355, at \*4 (D. Conn. July 9, 2012) (holding that ten-day confinement to quarters without showers, telephone usage, or hygiene products is not an atypical and significant hardship); *Pettus v. Geaver*, 2007 WL 295313, at \*2 (N.D.N.Y. Jan. 10, 2007) ("[A]lthough [plaintiff] contends that he was deprived of shower[s], recreation, toothbrush and toothpaste for 21 days, he has failed to demonstrate that given the limited period of deprivation, these conditions gave rise to a protected liberty interest.") (citation and internal quotations omitted); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs.") (internal quotation marks and citation omitted); *Warren v. Irvin*, 985 F. Supp. 350 (W.D.N.Y. 1997) ("The temporary loss of various privileges . . . [including] telephone, package, commissary, earphone, movie, television, and third shower—does not represent the type of deprivation which could reasonably be viewed as imposing atypical and significant hardship to an inmate.") (citations omitted); *Gill v. Pact Org.*, 1997 WL 539948, at \*9–10 (S.D.N.Y. Aug. 28, 1997) (holding that 26 days of administrative segregation with deprivation of exercise and personal property "does not state a claim for denial of a cognizable liberty interest").

Stimpson also mentions that unidentified individuals deprived him of his allergy medication during his confinement in administrative detention. He does not allege that he suffered any significant health risk or injury due to the alleged deprivation of allergy medication. *See Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir. 2009) (alleged eczema, back pain, stomach

14

disorders, allergies, and asthma did not constitute a "serious medical need"). Nor does he allege that any of the named defendants were involved in the deprivation.

Because Stimpson has not alleged that the confinement in administrative detention for a short period of time caused him to experience atypical or significant hardship, he has not asserted a protected liberty interest that would entitle him to due process prior to his placement in administrative detention. Even if the conditions in administrative detention did constitute a significant or atypical hardship, however, Stimpson does not allege that any of the defendants failed to provide him with the process that he was due with regard to his placement in administrative detention pursuant to the issuance of the disciplinary report. Accordingly, his allegation that the defendants violated his Fourteenth Amendment procedural due process rights in connection with his placement on administrative detention for nineteen days fails to state a claim upon which relief may be granted and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. Fourteenth Amendment Failure to Protect Claim

Stimpson contends that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to properly classify Inmate Andino and by placing Andino in his cell as his cellmate. There is no liberty interest in having another inmate classified in a certain way. Prisoners have no constitutional rights to a particular security classification. *See Taylor v. Levesque*, 2005 WL 3050973, at *3–4 (D. Conn. Nov. 10, 2005), *aff'd,* 246 F. App'x 772 (2d Cir. 2007) (recognizing that "the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action" and that

15

"Connecticut inmates have no state or federally created liberty interest in their classification"). Thus, Stimpson was not entitled to a hearing prior to the placement of Andino in his cell.

Stimpson also claims that prior to imposing punishment the Fourteenth Amendment requires due process in the form of a probable cause hearing, the right to question his accusers, and a jury of his peers. The Fourteenth Amendment does not provide for a probable cause hearing, a jury of one's peers, or a right to question accusers. Those rights are set forth in the Fourth and Sixth Amendments. Stimpson does not allege that he was a pretrial detainee at the time of the incident involving Inmate Andino. Thus, the court cannot discern how the rights to a probable cause hearing, a jury of one's peers or the right to confront one's accusers pertain to Stimpson's claims.

The Eighth Amendment protects the rights of a convicted prisoner while the Fourteenth Amendment protects the rights of a pretrial detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (in contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a pretrial detainee] is whether conditions [of confinement] amount to punishment of the detainee" under the Due Process Clause of the Fourteenth Amendment). Accordingly, the Eighth rather than the Fourteenth Amendment governs Stimpson's claims of failure to protect or deliberate indifference to safety. Because the Fourteenth Amendment is inapplicable to Stimpson's claims of failure to protect from harm, the Fourteenth Amendment failure to protect claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

      **E.**    **Eighth Amendment Claims**

Stimpson claims that the failure to classify Inmate Andino as a sexual predator given his convictions and complaints by other inmates and to permit Andino to become his cell partner constitutes a failure to protect him from harm in violation of the Eighth Amendment. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)). Thus, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment" and will give rise to a failure to protect claim. *Farmer*, 511 U.S. at 828 (internal quotation marks and citations omitted).

To state a claim of failure to protect, the plaintiff must show that the defendant prison officials possessed culpable intent, that is, the officials knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing take corrective action. *Id.* at 834. Mere negligence does not constitute conduct that meets the element of subjective intent. Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

Stimpson claims that he repeatedly informed Captain Hall that Inmate Andino was sexually assaulting and harassing him. He also asserts that Department of Correction officials were aware of the possibility that Inmate Andino might sexually assault him because of prior complaints by other inmates. Those allegations are sufficient to state plausible Eighth Amendment claims of deliberate indifference to harm and failure to protect from harm against Captain Hall, Warden Chapdelaine, and the Commissioner of Correction.

**Conclusion**

The Application to Proceed In Forma Pauperis [**ECF No. 16**] is **DENIED** as moot. The Amended Complaint [**ECF No. 15**] is **DISMISSED** for failure to comply with the court's prior orders and pursuant to 28 U.S.C. § 1915A(b)(1). The Letter Seeking to Add Defendants [**ECF No. 17**] is **DENIED** and the Letter Seeking Injunctive Relief and to Add Defendants [**ECF No. 18**] is **DENIED in all respects.**

With regard to the claims in the Complaint [**ECF No. 1**], the following claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1): the claims against the Connecticut Department of Correction, the Fourteenth Amendment procedural due process claims related to Stimpson's placement in administrative detention and the Fourteenth Amendment failure to protect from harm claim. The claims against defendants Chapdelaine, Hall, and the Commissioner of Correction in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The Eighth Amendment claims of deliberate indifference to harm and failure to protect from harm as asserted in the Complaint [**ECF No. 1**] will proceed against Captain Hall, Warden Chapdelaine, and the Commissioner of Correction in their individual capacities.

Within twenty-one days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Commissioner of Correction Scott Semple, Warden Chapdelaine, and Captain Hall and mail a waiver of service of process request packet and a copy of the Complaint [**ECF No. 1**] to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth day after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals

Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

SO ORDERED at Bridgeport, Connecticut this 23rd day of January 2017.

                                                /s/ Stefan R. Underhill_____
                                                Stefan R. Underhill
                                                United States District Judge